UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 10-123 (DWF/FLN) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Hugo Rene Rogque-Donis,** | |
| Defendant. | |

Erika R. Mozangue, Assistant United States Attorney, for Plaintiff.
Andrew H. Mohring for Defendant.

**THIS MATTER** came before the undersigned United States Magistrate Judge on June 3, 2010 on Defendant's Motion to Suppress April 22, 2010 and April 10, 2010 Statements, Admissions and Answers [#16]. At the hearing, the Court received testimony from Marnie Midby, and the Government submitted three exhibits into evidence.[1]

The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, the Court recommends Defendant's Motion to Suppress April 22, 2010 and April 10, 2010 Statements, Admissions and Answers [#16] be **DENIED**.

## I. FINDINGS OF FACT

**Testimony of Agent Marnie Midby**

---

[1] Government Exhibit 1 is a photocopy of one-page Spanish language "Declaracion de Derechos" and "Renuncia a los Derechos" document with signature lines; Government Exhibit 2 is a photocopy of three-page "Record of Sworn Statement in an Administrative Proceeding" document (in English and Spanish); and Government Exhibit 3 is a photocopy of one-page "Notice of Intent/Decision to Reinstate Prior Order" document (in English).

1

At the hearing, Immigration and Customs Enforcement Agent Marnie Midby testified that Defendant was arrested in Los Angeles, California on September 20, 2009 and was transferred to Ramsey County, pursuant to a warrant, on October 8, 2009. After serving 189 days in the Ramsey County workhouse, Defendant was ultimately transferred to the custody of Immigration and Customs Enforcement on April 22, 2010. Agent Midby testified that she took a statement from Defendant on April 22, 2010 as part of her job duties to "determine alienage and removability." The stated purpose of her interview was "to get a sworn statement from him stating that he was in the country illegally and had been removed prior to April 22nd." She testified that Defendant did not appear before any judicial official "on the immigration hold" before she spoke with him.

Agent Midby further testified that she is fluent in Spanish and communicated with Defendant in Spanish. She stated that, before beginning her interview with Defendant, she identified herself by name as an agent with Immigration and Customs Enforcement. She did not advise Defendant of the purpose of her interview but represented that she "had some questions for him." She stated that she then read, in its entirety in Spanish, the Statement of Rights form admitted as Government Exhibit 1. (*See* Gov't Ex. 1.) She testified that she asked Defendant, in Spanish, "if he was willing to speak with me without a lawyer present . . . he said yes." At the hearing, she also identified her signature, Defendant's signature and a witness' signature on Government Exhibit 1.[2] (*See* Gov't Ex. 1.)

Additionally, Agent Midby acknowledged that Government Exhibit 1 indicates that Defendant was taken into custody at "ten o'clock" and that he signed the waiver at "ten-fifteen."

---

[2]After the hearing, counsel for both parties submitted a stipulation to the English translation of the form admitted as Government Exhibit 1. (Doc. No. 25.) Although there was no testimony to this effect, it appears from the document (Doc. No. 25) that both Government Exhibit 1 and the English "Waiver" were separately signed by Defendant, Agent Midby and the witness. (Gov't Ex. 1; Doc. No. 25.)

(*See* Gov't Ex. 1.) She stated that she filled in the relevant times on the document herself. (*See* Gov't Ex. 1.) In the fifteen minute interval between the time he was taken into custody and the time Defendant signed the document (*see* Gov't Ex. 1), Agent Midby testified that his picture was taken and he was placed in a holding cell until she was ready to interview him.

After signing the waiver of rights form (Gov't Ex. 1), Agent Midby proceeded with her interview of Defendant. She stated that she also read to Defendant, in Spanish, the first paragraph and administrative rights contained within Government Exhibit 2. (*See* Gov't Ex. 2.) Agent Midby then asked Defendant, in Spanish, the questions provided on the form. (*See* Gov't Ex. 2.) She testified that Defendant answered the questions in Spanish, and she wrote his responses on the form in English, pursuant to standard procedure. (*See* Gov't Ex. 2.)

Agent Midby also testified that, during her interview with Defendant, he never asked for an attorney and never asked for her questioning to stop. She stated that the tone of interview was "casual" and "conversational" and that Defendant was "very relaxed" and "very willing to answer questions." Defendant appeared clear-headed and appeared to understand her questions. Agent Midby represented that at no point during the interview did she threaten or make any promises to Defendant. She further stated that the interview lasted "about five minutes" and was not recorded.

After Defendant signed his sworn statement (*see* Gov't Ex. 2), Agent Midby acknowledged further asking Defendant "biographical information," in response to which Defendant stated that "he had come here in 2009–not at a port of entry–he crossed the border illegally without inspection." Based on this information, Agent Midby prepared a "report," which she identified as Government Exhibit 3. (*See* Gov't Ex. 3.) She testified that, a few hours later, at about one o'clock, "when [Agent Midby] served him his final paperwork," she asked Defendant "if he had any issues with his

3

reinstatement of removal order" to which he responded that "it was all correct."

## II. CONCLUSIONS OF LAW

**A.  Standard for Waiver of *Miranda* Rights**

In order for evidence obtained as a result of custodial interrogation to be used against a defendant at trial, the Fifth Amendment requires that law enforcement advise the individual of his constitutional rights and that he make a valid waiver of those rights. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Before questioning begins, a suspect in custody must be informed of the following: (1) that he has the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed. *Id.* at 444, 469–70, 478–79. Law enforcement officials must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." *Id.* at 467. After the warnings are given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. *Id.* at 473–74. Statements elicited from a suspect in violation of *Miranda* are inadmissible. *Stansbury v. California*, 511 U.S. 318, 322 (1994).

Once advised of his *Miranda* rights, a suspect's waiver of his Fifth Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made. *Miranda*, 384 U.S. at 444; *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002); *see also Berghuis v. Thompkins,* --- S. Ct.---, 2010 WL 2160784 at *9 (June 1, 2010). A waiver is made knowingly if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion,

4

or deception." *Id*. It is the Government's burden to show by a preponderance of evidence that the suspect's waiver meets these standards. *Miranda*, 384 U.S. at 473; *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

In order to invoke one's Fifth Amendment right to counsel, a suspect must do so unambiguously. *Thompkins*, 2010 WL 2160784 at *8 ("If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights."), citing *Davis v. United States*, 512 U.S. 452, 461–62 (1994).

Similarly, a suspect's invocation of the right to silence must be unambiguous. *See Thompkins*, 2010 WL 2160784 at *9 ("Thompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning . . . . Here he did neither, so he did not invoke his right to remain silent.") (quotation omitted); *United States v. Ferrer-Montoya*, 483 F.3d 565, 569 (8th Cir. 2007) ("Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of *Miranda*."). "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Thompkins*, 2010 WL 2160784 at * 11 (citations omitted) ("If the State establishes that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights . . . The prosecution must make the additional showing that the accused understood these rights.")

**B.     Defendant's Motion to Suppress Should Be Denied.**

### 1. April 10, 2008 Statement

Citing a typographical error in his motion papers, defense counsel represented at the hearing that Defendant made no statement to law enforcement on April 10, 2010; rather, Defendant made the statement at issue on April 10, 2008. Defense counsel indicated, however, that he does not intend to challenge the admissibility of the April 10, 2008 statement based upon the Government's representation that it will not seek to admit it at trial. Therefore, to the extent the motion to suppress pertains to Defendant's statement of April 10, 2008, the motion should be denied as moot.

### 2. April 22, 2010 Statement

Defendant contends that statements made to Agent Midby on April 22, 2010 should be suppressed because they were made without the benefit of a valid advice-of-rights.

Defendant argues that the administrative rights read to Defendant on April 22, 2010 from Government Exhibit 2 did not constitute a valid *Miranda* advisory. (*See* Gov't Ex. 2.) He does not contest, however, that the rights articulated within the Statement of Rights form (Gov't Ex. 1), initially recited to Defendant in Spanish, amount to a valid *Miranda* advisory. (*See also* Doc. No. 25.) The Court finds, therefore, that the rights recited to Defendant by Agent Midby prior to questioning, as provided in Government Exhibit 1, constituted a valid advisory as required by *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). (*See* Gov't Ex. 1; Doc. No. 25.)

After Agent Midby advised Defendant of his rights on April 22, 2010, Defendant explicitly agreed to speak with her without a lawyer present. He further signed a waiver of rights form. (*See* Gov't Ex. 1; Doc. No. 25.) Agent Midby also testified that Defendant appeared clear-headed and appeared to understand her questions. During the interview, he was "very relaxed" and "very willing to answer" the questions posed. At no time did Defendant request an attorney, ask to terminate the

interview, or invoke his right to silence.

Based upon the foregoing, the Court finds that Defendant knowingly and voluntarily waived his *Miranda* rights on April 22, 2010. Furthermore, even assuming that Agent Midby recited the Statement of Rights (Gov't Ex. 1) a full fifteen minutes before Defendant signed the waiver form and interrogation began, such a delay is insufficient to render stale the initial advice of rights. *See e.g. United States v. Nguyen*, --- F.3d ---, 2010 WL 2346690 at *3 (8th Cir. June 14, 2010); *United States v. Ferrer-Montoya*, 483 F.3d 565, 569–70 (8th Cir. 2007). Consequently, all statements on April 22, 2010 are admissible.

In sum, the Court concludes that suppression of Defendant's statements in the instant case is not warranted.

### III. RECOMMENDATION

Based upon the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress April 22, 2010 and April 10, 2010 Statements, Admissions and Answers [#16] be **DENIED**.


DATED: June 23, 2010                             *s/ Franklin L. Noel*
                                                 FRANKLIN L. NOEL
                                                 United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 7, 2010**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within 14 days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and

Recommendation, the party making the objections shall timely order and cause to be filed by **July 7, 2010,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.